# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>BA SPORTS NUTRITION, LLC<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br>UNIX PACKAGING, LLC and WESTERN GROUP PACKAGING, LLC | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)*<br><br>Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>2/07/2024 4:02 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By S. Ruiz, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Los Angeles Superior Court<br>111 N. Hill Street<br>Los Angeles, California 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>24STCV03219 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Joseph F. Coyne, Jr., Mary E. Tarduno, Jennifer N. Le
Sheppard, Mullin, Richter & Hampton LLP
333 S. Hope St., 43rd Fl., Los Angeles, CA 90071 Telephone: 213.620.1780 / Fax: 213.620.1398

| | | |
|---|---|---|
| DATE:<br>*(Fecha)* 02/07/2024 | Clerk, by<br>*(Secretario)* David W. Slayton, Executive Officer/Clerk of Court<br>S. Ruiz | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

**SUMMONS**

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2     Including Professional Corporations
   JOSEPH F. COYNE, JR., Cal. Bar No. 93707
3  MARY E. TARDUNO, Cal. Bar No. 106624
   JENNIFER N. LE, Cal. Bar No. 307755
4  333 S. Hope Street, 43rd Floor
   Los Angeles, CA 90071
5  Telephone:    213-620-1780
   Facsimile:    213-620-1398
6  jcoyne@sheppardmullin.com
   mtarduno@sheppardmullin.com
7  jle@sheppardmullin.com

8  Attorneys for Plaintiffs
   UNIX PACKAGING, LLC AND WESTERN
9  GROUP PACKAGING, LLC

Electronically FILED by
Superior Court of California,
County of Los Angeles
2/07/2024 4:02 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Ruiz, Deputy Clerk

10                SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                    FOR THE COUNTY OF LOS ANGELES

12

13
   UNIX PACKAGING, LLC and                  Case No.  24STCV03219
14 WESTERN GROUP PACKAGING, LLC,
                                            **COMPLAINT FOR:**
15              Plaintiffs,
                                            1.  **BREACH OF CONTRACT**
16        v.                                2.  **BREACH OF THE IMPLIED**
                                                **COVENANT OF GOOD FAITH**
17 BA SPORTS NUTRITION, LLC,                    **AND FAIR DEALING**
                                            3.  **PROMISSORY ESTOPPEL**
18              Defendant.                   4.  **NEGLIGENT**
                                                **MISREPRESENTATION**
19                                          5.  **UNJUST ENRICHMENT**
                                            6.  **DECLARATORY RELIEF**
20                                          7.  **DECLARATORY RELIEF**

21

22

23                                          **DEMAND FOR JURY TRIAL**

24

25

26

27

28

                                   -1-
SMRH:4861-6904-2851.1                                          COMPLAINT

Plaintiffs Unix Packaging, LLC ("Unix") and Western Group Packaging, LLC ("WGP") (collectively, "Plaintiffs") allege as follows:

## INTRODUCTION

1.     Defendant BA Sports Nutrition, LLC ("BASN") is a privately held company (owned by The Coca-Cola Company ("Coca-Cola")) that markets and sells sports drinks under the brand name BodyArmor with several product lines, including BodyArmor SuperDrink and BodyArmor Sport Water.  BASN markets BodyArmor as a "premium, sports drink that provides superior hydration. . . .and is packed with electrolytes, coconut water, and antioxidants."[1]

2.     Plaintiffs Unix and WGP are privately held and affiliated companies that offer state-of-the-art beverage manufacturing facilities located in, among other places, Montebello, California; Morganton, North Carolina; and Las Vegas, Nevada to serve their varied customers in the beverage industry.  Plaintiffs specialize in manufacturing and bottling an array of types of drinks, including carbonated beverages, sports drinks, purified and enhanced waters, kombuchas, etc.

3.     Under the guise of growing its business and expanding production, BASN started a partnership with WGP in 2019 and Unix in 2020 for production of BASN sport drink products.  Through a series of binding Letters of Intent (and amendments thereto) dating from February 2019 to December 2021("LOIs"),  BASN and Plaintiffs entered into a manufacturing arrangement whereby Plaintiffs agreed to invest substantial capital to purchase and install equipment needed to build production lines in Plaintiffs' Nevada and North Carolina facilities to produce BASN's committed production volumes of its beverage products.  In turn, BASN agreed to repay Plaintiffs for their capital investment in the equipment according to an amortization schedule, purchase the committed production volumes, and if it could not make the committed production volumes, to pay Take or Pay penalties.  Because the parties never entered into a formal supply agreement, like they

---

[1] BodyArmor Our Story, https://www.drinkbodyarmor.com/our-story/ (last visited February 7, 2024.)

SMRH:4861-6904-2851.1                                                                    COMPLAINT

1  intended to, the LOIs, which contemplate definitive agreements not being completed, alone

2  govern the parties' entire partnership for production.

3      4.      Indeed, the parties' largest contract with the highest amount of committed

4  production volumes from BASN and highest amount for capital investment in needed

5  equipment was the Letter of Intent, dated September 10, 2020 ("2020 LOI").  The 2020

6  LOI governed the parties' production at the Las Vegas facility[2] ("LV Facility") for a new

7  production Line 3-LV and the North Carolina facility ("NC Facility") for production Line

8  3-NC.[3]  Under the 2020 LOI, Plaintiffs agreed to build Line 3-LV for free and Line 3-NC

9  for $15 million with each line to produce on average at minimum 15 million cases of

10 beverage products for BASN per year.  The terms for the Line 3-LV and Line 3-NC were

11 set for 5 years from their start date.

12     5.      To adequately fund the purchase and installation of the necessary equipment

13 and ancillary infrastructure to support the production lines as well as hire and train the

14 necessary personnel, Plaintiffs invested well over $40 million through third-party

15 financing, heavily leveraging the companies.  Yet, shortly after doing so and near the

16 beginning of the parties' contractual terms under the 2020 LOI, BASN suddenly in August

17 2021 started drastically decreasing its purchase of contractually committed production

18 volumes by more than 75%.  This drastic cut in production volumes left Plaintiffs in the

19 untenable position of having idle production lines and no way of covering the costs even

20 with BASN making Take or Pay payments.  For that reason, Plaintiffs took great care to

21 communicate with BASN their need to fill available lines to cover costs, which BASN

22 representatives agreed to.

23 _____

24 [2] WGP and BASN previously entered into a Letter of Intent, dated February 25, 2019, whereby WGP agreed to build Line 2-LV to produce BASN products and BASN agreed to repay $2.4 million of the capital investment in equipment needed to build that line by way

25 of an amortization schedule based on cases produced, together with a volume commitment for said line ("2019 LOI").  Based on representations of increased volume demand, BASN

26 requested and WGP agreed, in November 2020, by way of amendment to the LOIs to make Line 2-LV exclusive to BASN.

27 [3] The 2020 LOI amended the 2019 LOI by increasing BASN's volume commitments for

28 Line 2-LV.

6.     Though BASN continued to substantially cut its volume purchases, Plaintiffs remained committed to the partnership and prioritizing BASN. By mid-2023, more than four years into the parties' business arrangement, it was clear that BASN was looking for a way out of the partnership to avoid its payment obligations due to the apparent decline in its business. First, through its July 7, 2023, letter, BASN raised meritless claims alleging (1) that the LV Facility had "unsanitary conditions" reported by Unix whistleblowers; and (2) that Plaintiffs violated the terms of the LOIs by allowing competitors to use BASN production lines. By letter, dated July 11, 2023, Plaintiffs responded and debunked BASN's meritless claims, including explaining the parties' contractual arrangement which permitted Plaintiffs to use the available lines for other customers, including for Line 2-LV, which BASN had exclusive rights to per the 2020 LOI.[4] BASN never responded to Plaintiffs' letter, nor did it take Plaintiffs up on their invitation for BASN to have an on-site inspection to ensure sanitary conditions at the LV Facility and discuss any of the parties' ongoing concerns.

7.     BASN also raised concerns and disappointment relating to a production issue which led to a voluntary recall by BASN in February 2023 for certain lots of BASN water products manufactured by Unix in the CA Facility ("February 2023 Voluntary Recall") under the parties' CA 2021 LOI.[5] Valuing their partnership with BASN, Plaintiffs seriously and thoroughly investigated every concern raised by BASN in its letter, and where appropriate, implemented corrective action plans to quickly cure them as reviewed and approved by BASN.

8.     Indeed, through Unix's own corrective actions and procedures implemented to detect and prevent issues related to the February 2023 Voluntary Recall, in October 2023, during an internal quality control inspection at the CA Facility, Unix personnel

---

[4] In March 2022, due to the drastic drop in BASN's production volumes which was negatively impacting Plaintiffs, BASN agreed to allow WGP to use Line 2- NV for other customers, under certain agreed upon terms.

[5] In February 2021, Unix and BASN also entered into a Letter of Intent ("CA 2021 LOI") in connection with the production of BASN's Sportwater product in Unix's California facility ("CA Facility").

found a bottle showing plastic damage similar to that believed to have caused the February 2023 Voluntary Recall.  There was no product escape and no recall as confirmed by BASN's October 13, 2023, email, stating that "nothing reached our customers."  Unix conducted a root cause analysis and resolved the issue.

9.     As such, it was a surprise to Plaintiffs when on December 15, 2023, BASN served Plaintiffs with a termination notice for cause based on "repeated, uncured material breaches" for all three facilities, despite the fact that BASN's communications to Plaintiffs relating to alleged breaches never included any production issues or other issues relating to the NC Facility.  In direct contravention to the LOIs' terms, BASN failed to provide Plaintiffs with a prior formal written notice allowing Plaintiffs to cure the deficiencies within 60 days.  Even so, BASN had no grounds to terminate, especially when Plaintiffs had already either cured production issues or proved that certain claims were entirely baseless or did not constitute material breach under the LOIs.  In addition, the inclusion of the NC Facility in the termination is in direct breach of the no cross-termination provisions of the LOI given that BASN's Notice of Termination did not reference any alleged breaches that took place in the NC Facility.

10.    BASN also incorrectly served the termination notice based on provisions of an alleged MSA between Coca-Cola and Plaintiffs, dated March 16, 2016.  First, there is only an MSA between Coca-Cola and Unix, dated March 16, 2016, which is a completely separate contract relating to the bottling of only Coca-Cola products that never mentioned or had anything to do with BASN and was entered into long before the start of BASN and Plaintiffs' partnership.[6]  Second, the MSA is wholly inapplicable because the parties have never formally agreed that they would be bound the MSA terms and the parties, including Coca-Cola, confirmed that the rights and obligations under the LOIs shall remain with BASN.

---

[6] The MSA was later amended in October 2023 to extend the term and nothing in this amendment referenced BASN, let alone include BASN as a party to the MSA.

-5-

11.     It is evident that BASN only raised the production issues as pretext to avoid its payment obligations to Plaintiffs under the LOIs.  Under certain LOIs (particularly the 2020 LOI), BASN need not reimburse Plaintiffs for their capital investment or make Take or Pay payments if BASN terminates for cause.  However, as discussed above, BASN has no grounds to so terminate.

12.     Indeed, Plaintiffs are informed and believe that BASN, with knowledge that its business was not as popular as it purported it to be, convinced Plaintiffs to sign the LOIs to inflate its valuation to attract Coca-Cola as a buyer in 2019 and then again 2021. Shortly after the acquisition, the seeming popularity of BASN's sport drink products severely diminished and never recovered.  Now with its business on the decline, BASN is looking for a fast way out with minimal financial ramification.

13.     However, the terms of the LOIs are clear and even if BASN chooses to terminate, it can only do so without cause.  Under such termination, BASN must fully repay Plaintiffs their capital investment in equipment and certain Take or Pay payments within 30 days.  To date, BASN has failed to do so and has failed to pay its payment obligations under 2020 LOI for Quarter 4 of 2023, breaching the parties' agreements.

14.     The actions of BASN named as a Defendant in this lawsuit, as alleged in this Complaint, constitute, among other things, breaches of contracts with Plaintiffs, breaches of the implied covenant of good faith and fair dealing, promissory estoppel, negligent misrepresentation, and unjust enrichment.  Plaintiffs bring this action to recover damages stemming from BASN's actions; to recover other related damages and relief; and to obtain declaratory reliefs establishing that (1) the LOIs, not the MSA, govern the parties' rights and obligations as to their business arrangement for production of BASN products, and (2) BASN's indemnification claim against Unix for $15 million in losses due to the February 2023 Voluntary Recall is invalid.[7]

---

[7] BASN raised an indemnification claim against Unix under the MSA for BASN's $15 million loss it allegedly incurred due to the February 2023 Voluntary Recall.  This indemnification claim is wholly invalid because the MSA does not govern the parties' rights and obligations related to the production of BASN water products from the CA

**PARTIES**

15.     Plaintiff Unix Packaging, LLC is, and at all times mentioned in this Complaint, a California limited liability company with its principal place of business in Montebello, California and doing business in the State of California and State of North Carolina.

16.     Plaintiff Western Group Packaging, LLC is, and at all times mentioned in this Complaint, a Nevada liability company with its principal place of business in North Las Vegas, Nevada.

17.     Defendant BA Sports Nutrition, LLC is, and at all times mentioned in this Complaint, a Delaware limited liability company with its principal place of business in New York and doing business in California.  Plaintiffs are informed and believe, and on that basis allege, that certain members of BA Sports Nutrition, LLC are California citizens.

**JURISDICTION AND VENUE**

18.     This Court has jurisdiction over this Complaint pursuant to California Code of Civil Procedure § 410.10.

19.     Pursuant to California Code of Civil Procedure Section 393, venue is proper in Los Angeles County as the county in which these claims arose.  In addition, pursuant to California Code of Civil Procedure Sections 395 and 395.5, venue is proper in Los Angeles County as the county in which Unix's principal place of business is located, the parties' agreements were made and breach of the parties' agreements occurred.

**FACTUAL ALLEGATIONS**

**The Parties' Production Partnership Under Executed Letters of Intent**

20.     From 2019 to 2023, BASN and Plaintiffs had a manufacturing partnership whereby Plaintiffs invested, purchased and implemented certain equipment required by BASN to manufacture and produce BASN sports drink products, and BASN in turn agreed

Facility; the CA 2021 LOI does.  Moreover, the parties do not have an indemnification provision under the CA 2021 LOI.  It appears that BASN is simply trying to recoup their loss of sales volume and market share in the industry by blaming Unix.

-7-

COMPLAINT

to reimburse and repay Plaintiffs for their capital investment related to the equipment and purchase set volumes of products from Plaintiffs.  To memorialize the parties' business arrangement and set forth terms and conditions governing said arrangement, the parties entered into a series of binding Letters of Intent ("LOIs") and amendments thereto from February 2019 to December 2021.  Despite the intention to enter into formal supply agreements to address basic warranties, quality acceptance procedures, intellectual property, and general liability concerns, the parties never did so.  As such, the LOIs alone govern the parties' entire business arrangement.

21.    In 2019, BASN started its partnership first with WGP for production of BASN's BodyArmor Superdrink product ("BA Product") at WGP's bottle manufacturing plant in Las Vegas, Nevada ("LV Facility") (Line 2-LV).  BASN and WGP entered into a Letter of Intent, dated February 25, 2019 and executed March 26, 2019 ("2019 LOI"), establishing basic terms and conditions for WGP's production obligations to BASN. Under the terms of the 2019 LOI, BASN committed to certain minimum volumes for a 3-year period (from January 1, 2019 through December 31, 2021) in exchange for WGP investing approximately $3.1 million on the purchase and installation of certain equipment required for production of BA Products, with an agreement that BASN would repay a portion of the capital investment for the equipment, $2.4 million, by way of amortization payments.[8]  A Take or Pay payment was built into the LOI to address the event where BASN was unable to purchase committed production volumes.

22.    In 2020, BASN advised Plaintiffs that due to substantial growth of the brand, BASN needed to increase its production volumes of BA Products and committed to increased volumes with Plaintiffs if additional production lines were made available to BASN.  To meet BASN's request, WGP added a new line to its LV Facility (Line 3- LV) using its own capital to invest in the purchase and installation of a hot fill line, with no commitment from BASN to repay the investment for this new Line 3.  BASN also

---

[8] The amortization for Line 2-LV has been paid in full by BASN.

increased its volume commitments for Line 2-LV.  Unix also built a new hot fill line in its facility in Morganton, North Carolina ("NC Facility") (Line 3-NC), investing approximately $20 million on the purchase, installation and commissioning of the line and equipment needed to meet BASN volume demands.  In turn, BASN agreed to pay $15 million towards Unix's capital investment by way of guaranteed monthly amortized payments.  The parties further agreed that BASN would purchase regularly forecasted quantities of its finished BA Products from Plaintiffs for five years from the start of production date.  A Take or Pay payment was also built into the parties' agreement to address the event where BASN could not meet and purchase the committed production volumes.  On September 10, 2020, the parties executed a binding Letter of Intent setting forth their aforementioned intentions and agreements with respect to production of BA Products by Plaintiffs at their LV and NC Facilities ("2020 LOI").

23.     Additionally, at the time of the negotiations in 2020, given the surge in volumes needed by BASN, BASN requested and WGP agreed to modify the parties' agreement to grant exclusivity to BASN only as to Line 2-LV as memorialized in the Amendment to the 2020 LOI, dated November 17, 2020 ("2020 Amendment").  The parties had no other exclusivity agreement as to any of the other production lines for BASN.

24.     In early 2021, BASN again reached out to Plaintiffs, expressing an interest for an option to secure a second production line at the NC Facility in the future.  To this end, the parties executed an Amendment to the 2019 and 2020 LOIs, dated January 27, 2021 and executed March 8, 2021, whereby BASN agreed to pay $3 million for build out cost ("Build Out Cost") for an additional hot fill line (Line 4-NC) in order to secure the option to exclusively use Line 4-NC if and when such option was exercised ("2021 Amendment").  The Build Out Cost was non-refundable and earned regardless if BASN ultimately chose not to proceed with the purchase and installation of Line 4-NC.  The parties further added the Build Out Cost to BASN's owed capital investment responsibility

-9-

1    under the 2019 LOI, payable to WGP at an agreed upon per case amortization on existing

2    Line 2 and 3-LV.  Payment of this amortization is still outstanding.

3         25.    Under the 2021 Amendment, the option for BASN to exercise its right

4    relating to Line 4-NC expired if not exercised on December 31, 2021.  BASN never

5    exercised the option.

6         26.    In February 2021, the parties negotiated another agreement, memorialized by

7    a Letter of Intent, dated February 5, 2021 and executed March 16, 2021, to further expand

8    BASN production, this time for its BodyArmor Sportwater product ("BA Water") ("CA

9    2021 LOI").  Under the CA 2021 LOI, Unix agreed to purchase and install equipment in its

10   facility in Montebello, CA ("CA Facility") to produce BA Water for BASN.

11        27.    In May 2022, BASN and Unix reached agreement for Unix to also produce

12   BA Water in the NC Facility ("2022 NC LOI").  Due to the long standing relationship

13   between the parties, Unix agreed to pay for and install all necessary change parts needed

14   for production of BA Water at the NC Facility in the amount of approximately $485,000.

15        **BASN Drastically Cut Production Volumes Soon After Plaintiffs Expended**

16        **Tremendous Capital Investment for BASN Production**

17        28.    To demonstrate their full commitment to their production partnership with

18   BASN, Plaintiff invested significant time, money and resources to accommodate

19   production for BASN in their three facilities.  With respect particularly to the buildout of

20   Line 3-LV and Line 3-NC per the 2020 LOI, Plaintiffs invested over $40 million through

21   third-party financing, heavily leveraging the companies.  And, to gear up for the increased

22   production commitment by BASN, Plaintiffs added additional employee shifts and hired

23   additional staff to accommodate the increased production volumes, substantially increasing

24   their overhead costs.  Plaintiffs gladly made these changes for BASN and heavily invested

25   in the production lines to ensure they could meet BASN' increased supply demands.

26        29.    Unfortunately, in August 2021, after Plaintiffs had already made the

27   investments and hired and trained new staff, BASN, suddenly and without any advance

28   notice, informed Plaintiffs that production volumes needed to be cut by more than 75%.

-10-

1  This drastic drop in production volumes by BASN caused a ripple effect, pushing Plaintiffs

2  to an anticipated default of their loan covenants by December 31, 2021.

3       30.    Left with no choice, in September 2021, Plaintiffs reached out to BASN

4  representatives for help.  To mitigate their losses resulting from the unplanned and sudden

5  reduction in BASN contractually agreed-upon production volumes, Plaintiffs suggested

6  and BASN agreed that the line time be made available to other customers.

7       31.    In an attempt to alleviate 2021 losses and for Unix to meet its loan covenants

8  with its lenders and avoid a financial default with its lenders, the Parties entered into an

9  Amendment to the 2020 LOI, dated December 20, 2021 and executed December 21, 2021,

10 whereby Plaintiffs agreed to substantial reductions in amounts due to it under the 2020

11 LOI in exchange for BASN agreeing to make immediate payments to Plaintiffs in the total

12 amount of $8.5 million before December 31, 2021 ("December 2021 Amendment").  In

13 return, BASN received the advantage of reduced per case amortization payments for Line

14 3- NC and a reduction of the principal balance of the NC capital investment.

15      32.    As part of the same amendment, the parties agreed that BASN's then parent,

16 The Coca-Cola Company ("Coca-Cola"), could use WGP's Line 2-LV to provide some

17 relief to the parties due to the significant drop in BASN production volumes.  Specifically,

18 the agreement allowed cases produced for Coca-Cola to be credited towards BASN's

19 committed production volumes.

20      33.    By February 2022, the situation had not improved and the Take or Pay

21 payment[9] built in the 2020 LOI could not sufficiently cover the losses Plaintiffs incurred

22 due to BASN's continued substantial drop in purchased production volumes from

23 Plaintiffs.  During this time, Plaintiffs remained transparent with BASN about their need to

24 sell line time to other customers to cover the losses experienced by BASN's inability to

25

26 _____

27 [9] While Plaintiffs acknowledge that the Take or Pay payment was built into the 2020 LOI to address the event where BASN could not meet its volume commitment, at the time of negotiations, the Take or Pay payment was intended to apply to isolated months not the

28 entire contract term.

               

1    meet volume commitments it made under the 2020 LOI.  Throughout this period, BASN

2    officials were well aware and worked with Plaintiffs.

3                    **BASN Raised Illegitimate Claims Not Backed By Facts or the Parties' LOIs**

4          34.    It was a surprise to Plaintiffs when on July 7, 2023 (via letter), BASN raised

5    displeasure with the fact that Plaintiffs ran beverage production on BASN idle and/or

6    slow-producing lines due directly to BASN's substantial drop in production volumes.

7    BASN argued that it should have influence over whether Plaintiffs could offer space to its

8    competitors on the contracted production lines and the terms thereto and claimed it had

9    contracted for exclusivity in some of the lines, which prohibited Plaintiffs from using those

10   lines.  BASN also claimed that because it agreed to "100% Take or Pays" that it should

11   have rights to pre-approve use of its lines and see the Take or Pay provisions reduced

12   proportionally based on non-BASN use.  BASN wanted the amortization rate to also be

13   reduced accordingly.

14         35.    Plaintiffs immediately responded to BASN (via letter) on July 11, 2023.

15   Through their General Counsel, Nazy Danesh, Plaintiffs assured BASN that it was

16   complying with the parties' contractual obligations and reminded BASN that it had only

17   contracted for exclusivity with one line, Line 2-LV, per the 2020 LOI and had received

18   approval from BASN executives to run other customers on the line.  The other remaining

19   lines remained open for use should BASN not meet its committed production volumes,

20   which it continuously did so since 2021.  Nevertheless, with great deference to BASN and

21   because Plaintiffs prioritized and greatly valued the parties' partnership, Plaintiffs took

22   care to be transparent whenever it was approached by a competitor requesting Plaintiffs to

23   produce for them on the available lines.

24         36.    Also in their July 11, 2023, letter, Plaintiffs explained the parties long

25   contractual history, which never contemplated that the amortization (meant to repay

26   Plaintiffs for their capital investment into building the lines for BASN) would ever be

27   reduced due to Plaintiffs allowing other customers to use the line.  The amortization

28   payments are due irrespective of whether there is any production by BASN.  Moreover,

-12-

1  while the parties agreed that the Take or Pay obligations would cover costs when BASN

2  failed to fulfill their order volume commitments, the parties' negotiations then and the

3  LOIs never contemplated BASN's drastic reduction in volume commitments.  The parties

4  entered into the LOIs with the expectation and representation that the BASN's volume

5  would stay consistent and close to the commitments made, with minimal incidents of lower

6  volume orders, not years long substantial order reduction.  And, as discussed above,

7  Plaintiffs specifically sought permission from BASN to use the lines for other customers.

8       37.    BASN also voiced in its July 7, 2023, letter, that it had received reporting

9  from Unix whistleblowers that the LV Facility had "unsanitary conditions."  Plaintiffs

10  immediately investigated this issue and informed BASN that this claim was meritless in

11  their July 11, 2023, letter.  The complaint was made by a disgruntled employee and

12  Plaintiffs immediately addressed this issue with BASN.  The alleged unsanitary conditions

13  were reviewed with BASN's quality executives and WGP provided evidence that there

14  was no veracity to the allegations that the LV Facility was unsanitary.  Troy Schauder (a

15  BASN representative), who at the time was on site frequently, further confirmed that the

16  videos and pictures presented by the disgruntled employee did not provide an accurate

17  representation of the LV Facility's cleanliness.  Plaintiffs also invited BASN to inspect

18  their LV Facility at any time to confirm the cleanliness of the LV Facility and close the

19  reported matter.

20       38.    Wanting to ensure that it maintained a healthy and prosperous relationship

21  with BASN and ensure that the parties remained comfortable in their partnership, in their

22  July 11, 2023, response letter, Plaintiff requested an in-person meeting with BASN

23  officials (including Felix Faulhaber) to discuss open issues and address a moving forward

24  plan.  BASN never responded to Plaintiff's request, never accepted Plaintiff's invitation

25  for an on-site inspection, and never responded to Plaintiff's response letter.

26      **Plaintiffs Quickly Investigated and Resolved Production Issues**

27       39.    Like with many manufacturers, from time to time, there will be varying

28  routine production issues that occur at their facilities.  These production issues are par for

course in the business, and can be efficiently resolved as long as they have been properly and promptly identified, rectified, and the affected products have been recalled (if needed).

40.     Throughout the parties' four-year partnership, there have been very few incidents of production issues involving the BASN products.  Three occurred in 2023 and Plaintiffs immediately investigated and diligently resolved the issues to improve their production and quality assurance process.

41.     The first incident occurred in February 28, 2023 when BASN informed Unix that it needed to issue a voluntary recall for its BA Water products produced by Unix at its CA Facility due to 5 customer complaints regarding foreign objects in the products ("February 2023 Voluntary Recall").  Unix immediately conducted an investigation and root cause analysis to assess and remedy the issue.  Unix involved BASN in the investigation process and implemented corrective actions and procedures designed to prevent a recurrence of the quality escape.  BASN approved Unix's corrective actions.

42.     Then on October 10, 2023, during an internal quality control inspection at the California facility, Unix personnel found a bottle showing plastic damage similar to that believed to have caused the February 2023 Voluntary Recall.  There was no product escape and no recall as confirmed by BASN's October 13, 2023, email, stating that "nothing reached our customers."  The issue was discovered as a result of the very corrective actions and procedures implemented by Unix after the February 2023 issue.  Unix conducted a root cause analysis and initiated a corrective action plan.

43.     The third incident occurred in or about October 2023, when BASN informed WGP that it received a complaint from a consumer alleging he swallowed a small metal valve in a BA Product produced at the LV Facility.[10]  WGP immediately investigated and found that the incident was an isolated one not due to WGP's overall quality process,

---

[10] There is some uncertainty as to whether the customer actually swallowed the item. Despite WGP's inquiries, the customer refused to provide medical support for any injury, making it virtually impossible for WGP to assess the veracity of the customer's claim. BASN tendered this claim to Unix who promptly took steps to address the claim and was in communication with BASN's insurance brokers who concurred with Unix's steps taken to address the claim.

-14-

1    which in fact worked.  Nevertheless, WGP implemented a corrective action plan to bolster

2    its process for increasing awareness of equipment integrity and dedicated inspection efforts

3    for the valves, effectively remedying the issue.

4         **BASN Abruptly Terminates the Parties' Partnership In Violation of the Terms**

5         **of the LOIs**

6         44.    Though Plaintiffs had already resolved all production issues, on December

7    15, 2023, BASN nevertheless served Plaintiffs with a termination notice for "repeated,

8    uncured material breaches," terminating for cause the parties' entire partnership for

9    production at all three facilities.  However, under the LOIs, BASN may only terminate for

10   cause if it provides written notice of the material breach and Plaintiffs do not cure the

11   deficiency within sixty (60) days from receipt of the notice.  (§ 6, 2020 LOI; § 6 CA LOI

12   BASN).  BASN failed to provide Plaintiffs with such formal written notice.  On that fact

13   alone, BASN's December 2023 termination notice and all actions taken thereof are

14   unjustified, invalid, and in breach of the contract.

15        45.    Even assuming there was proper notice, BASN has no grounds for

16   termination.  BASN's termination notice purported to be based upon "material breaches"

17   discussed in its July 6, 2023, letter and its October 13, 2023, email to Plaintiffs.  Those

18   communications mention: (1) February 2023 Voluntary Recall from the CA Facility; (2) an

19   October 2023 discovery of a bottle with plastic damage at the CA Facility; (3) alleged

20   "unsanitary conditions" reported by Unix whistleblowers at the LV Facility; and (4)

21   Plaintiffs' alleged breach of contractual obligations related to their non-BASN line usage.

22   The two facility issues were cured by the Plaintiffs long ago; the alleged unsanitary

23   conditions never existed; and Plaintiffs did not violate any contractual requirement

24   regarding line exclusivity.  BASN also raised, for the first time, the issue of the October

25   2023 incident involving a customer who swallowed a valve from a BA Product from the

26   LV Facility.  Like with the other plant issues, WGP cured that issue immediately upon

27   discovery.

28

-15-

46.    Thus, contrary to BASN's claims, there are no repeated, uncured materials breaches.  And, to the extent BASN conflate all the facilities issues together, it cannot do so.  Each facility and its production lines (and issues arising thereto) are governed by their separate LOI with a separate termination provision and a no cross-termination provision.  Importantly, BASN raised no concerns related to the NC Facilities, and yet it wrongfully terminated for cause production there as well.

**BASN Incorrectly Relies Upon the MSA for Its Termination Notice**

47.    BASN served its termination notice relying upon provisions of an alleged "MSA between CCNA [Coca-Cola North America] and Unix/WGP with an effective date of March 1, 2016," ("MSA").[11]  The MSA is inapplicable here.  No provision in the MSA applies to the instant parties' conduct and contractual partnership because the parties never signed any contractual agreement to be bound by the MSA.   The LOIs discussed above are the operative agreements governing the partnership and production.

48.    Though Coca-Cola acquired BASN in November 2021, thus making BASN a Coca-Cola affiliate, BASN cannot rely on the MSA as the basis for its termination or remedies thereto.  Indeed, the parties (including Coca-Cola) acknowledged in several writing and in practice that the LOIs continued to control, including in a November 1, 2021, Notice of Change of Control, in which Coca-Cola itself notified Plaintiffs that the rights and obligations under the 2019 LOI, 2020 LOI, 2021 Amendment, and the CA 2021 LOI "shall remain with [BASN] and, to the extent required under the terms of the [LOIs], are hereby expressly assumed by [BASN] in accordance with its terms."

49.    Moreover, the MSA expressly states that its terms are only applicable between a Coca-Cola affiliate, like BASN, and Plaintiffs if the parties executed a Statement of Work ("SOW") wherein the parties agree to be bound by the terms and

---

[11] There is no MSA between Cocal-Cola and WGP dated March 1, 2016.  The MSA was entered into by Coca-Cola, through its agent, Coca-Cola North America ("CCNA"), and Unix Packaging Inc. (the predecessor of Unix) and was an entirely separate agreement for separate products that never mentioned BASN.

1  conditions of the MSA.  To Plaintiffs' knowledge, there is no agreement between either

2  Unix or WPG agreeing to be bound by the MSA terms with BASN, no less an SOW.

3  **BASN Used the Production Issues As Pretext to Escape Its Own Monetary**

4  **Obligations to Plaintiffs**

5  50.  In the two years leading up to Coca-Cola acquiring BASN in 2021 and to

6  attract a buyer like Coca-Cola, BASN actively sought a partnership with Plaintiffs to

7  demonstrate BASN's seemingly robust business in the sports drink market.  Under the

8  pretense of expanding its business and increasing its production rates, BASN convinced

9  Plaintiffs to invest millions in capital building production lines to produce significant

10  committed production volumes for BASN.[12]  In return, BASN agreed under the terms of

11  the LOIs, to repay Plaintiffs according to an amortization schedule for their capital in

12  investing, purchasing and installing the lines and equipment needed for production ("BA

13  Capital Investment Responsibility").[13]  And, where BASN could not meet its committed

14  production volumes, BASN agreed to make Take or Pay payments.  Believing BASN

15  would stay true to its production commitments and valuing the parties' partnership,

16  Plaintiffs substantially invested capital through third-party lenders, heavily leveraging

17  themselves.

18  51.  BASN's payment obligations to Plaintiffs did not necessary end upon

19  termination of the partnership.  Under the 2019 LOI and 2020 LOI, BASN must repay the

20  balance of the BA Capital Investment Responsibility to Plaintiffs if it terminates without

21  cause.  Under the 2021 Amendment, BASN must repay the balance of the $3 million Build

22  Out Cost regardless if it terminates for cause or without cause.  Under the 2019 LOI and

23  the CA 2021 LOI, BASN must make certain Take or Pay payments regardless if it

24  terminates for cause or without cause.  And, under the 2020 LOI, BASN must make certain

25  [12] The 2019 LOI, 2020 LOI, and the CA 2021 LOI, together, all contemplated substantial

26  production of case volumes (as high as 15 million cases per year each from the NC Facility and LV Facility per the 2020 LOI) for a span of 5 years.

27  [13] BASN has fulfilled its BA Capital Investment Responsibility for all LOIs, except for such repayment obligations under the 2020 LOI for Line 3-NC and the 2021 Amendment's

28  Build Out Cost.

-17-

COMPLAINT

Take or Pay payments if it terminates without cause.  Thus, to avoid its greatest repayment obligations, BASN would have to terminate with cause, especially for any conduct governed by the 2020 LOI and its amendments thereto, which governs the terms for the largest committed production volumes and capital reimbursements.

52.    When BASN's business began to decline in 2021, evidenced by its abrupt and drastic drop in order volumes, it was clear that BASN would have a difficult time meeting its payment obligations to Plaintiffs, particularly its repayment of the BA Capital Investment Responsibility, which are in the millions.  Still wanting to cooperate with BASN, Plaintiffs informed and negotiated with BASN for terms that would allow other customers, including Coca-Cola, to use the production lines should BASN insufficiently fulfill their production volume quotas, essentially easing BASN's production obligations.  Yet, BASN clearly wanted a way out of the partnership that would be financially beneficial to BASN.  Thus, to avoid any further payments via its Take or Pay obligations under the remaining years left on the contracts and its BA Capital Investment Responsibility, BASN proceeded to serve a termination notice for cause on faulty, meritless grounds without complying with proper termination procedures prescribed in the LOIs.  Specifically, BASN used the production issues, which Plaintiffs quickly investigated and resolved (where applicable), at two separate facilities (CA and LV Facilities) under separate governing LOIs (2020 LOI and CA 2021 LOI) to assert an unfounded pattern of repeated, uncured material breaches to close BASN production at all the plants (including the NC Facility, which had no reported production issues).

53.    Moreover, BASN has failed to pay Plaintiffs for the amount due and owing for Quarter 4 of 2023 "Take or Pay" obligations for production in the NC Facility and LV Facility and amortization for both the BA Capital Investment Responsibility under the 2020 LOI and the Build Out Cost obligations under 2021 Amendment.

54.    In wrongfully terminating the parties' LOIs without justifiable grounds and failing to make its payment obligations, BASN has clearly violated the parties' agreements, forcing Plaintiffs to bring this act.

-18-

COMPLAINT

55.     Plaintiffs reserve the right to amend this Complaint to include additional allegations as additional facts come to light during discovery.

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

**(By Plaintiffs Unix Packaging, LLC and Western Group Packaging, LLC Against Defendant BA Sports Nutrition, LLC)**

56.     Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth above.

57.     Plaintiffs and BASN are parties to a series of LOIs, dated February 2019 to December 2021, that govern their partnership wherein Plaintiffs invested capital to purchase and implement equipment to produce beverage products for BASN, and BASN in return agreed repay Plaintiffs for their capital investment and pay Plaintiffs for producing committed production volumes for BASN.

58.     Plaintiffs has performed all of their material obligations under the aforementioned contracts (the LOIs) unless otherwise excused.

59.     BASN has breached obligations owed to Plaintiffs under the LOIs by: wrongfully terminating the parties' partnership and agreements without justifiable cause and without following contractual requirements; and by failing to make its payment obligations, including but not limited to Take or Pay penalties and BA Investment Capital Responsibility, under the applicable LOIs.

60.     As a direct and proximate result of the aforementioned breaches of contract, Plaintiffs have been damaged in an amount to be proven at the time of trial.

**<u>SECOND CAUSE OF ACTION</u>**

**<u>BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING</u>**

**(By Plaintiffs Unix Packaging, LLC and Western Group Packaging, LLC Against Defendant BA Sports Nutrition, LLC)**

61.     Plaintiffs re-allege and incorporate herein by reference each and every allegation set for above.

62.     As alleged above, BASN breached the terms of the LOIs with Plaintiffs by wrongfully terminating the parties' agreements and failing to make its payment obligations.  In the alternative, however, Plaintiffs allege that BASN breached the implied covenant of good faith and fair dealing inherent in those contracts by, among other things, wrongfully terminating the parties' partnership and agreements without any legitimate or good faith basis for doing so to avoid complying with BASN's substantial payment obligations and remaining performance obligations.

63.     As a result of these breaches of the implied covenant of good faith and fair dealing, Plaintiffs have suffered damages in an amount to be proven at trial.

**<u>THIRD CAUSE OF ACTION</u>**

**<u>PROMISSORY ESTOPPEL</u>**

**(By Plaintiffs Unix Packaging, LLC and Western Group Packaging, LLC Against Defendant BA Sports Nutrition, LLC)**

64.     Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth above.

65.     BASN promised Plaintiffs that it could and would maintain its committed high production volumes (or close to it) for its products and reimburse Plaintiffs for their capital investment in purchasing and acquiring the equipment needed to produce BASN products.

-20-

66.    Plaintiffs reasonably and justifiably relied upon these promises and thus entered into a series of LOIs with BASN and invested substantial capital in purchasing and implement equipment to produce BASN products.

67.    BASN failed to uphold its promises and could not maintain its committed production volumes nor properly reimburse Plaintiffs for their capital investment in production equipment.

68.    As a direct and proximate result of BASN's failure to uphold its promises, Plaintiffs have been damaged in an amount to be proven at the time of trial.

**FOURTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

**(By Plaintiffs Unix Packaging, LLC and Western Group Packaging, LLC Against Defendant BA Sports Nutrition, LLC)**

69.    Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth above.

70.    In the alternative, however, Plaintiffs, upon information and belief, allege that BASN negligently misrepresented that it could and would maintain its committed high production volumes (or close to it) for its products and reimburse Plaintiffs for their capital investment in purchasing and acquiring the equipment needed to produce BASN products.

71.    BASN had no reasonable grounds for believing that its representations were true when it made them, but nevertheless intended for Plaintiffs to rely upon them.

72.    Plaintiffs did rely upon these representations when they entered into a series of LOIs with BASN and invested substantial capital in purchasing and implement equipment to produce BASN products.

73.    As a direct and proximate result of the BASN's negligent misrepresentation, Plaintiffs have been damaged in an amount to be proven at the time of trial.

**FIFTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**(By Plaintiffs Unix Packaging, LLC and Western Group Packaging, LLC Against**

**Defendant BA Sports Nutrition, LLC)**

74.     Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth above.

75.     Since 2019, Plaintiffs has performed all of their contractual obligations under the LOIs, including investing and building equipment to produce products for BASN.

76.     From February 2019 to December 2023, BASN received substantial and valuable benefit in the form of Plaintiffs' performance of its contractual obligations, including but not limited to investing and building production lines for BASN with the promise that BASN would repay the costs of the build, making available and prioritizing those lines for production of BASN's products, and producing BASN's products.

77.     BASN has failed to pay Plaintiffs for their services and performance as promised.

78.     It would be unjust to allow BASN to retain the benefit of Plaintiffs' services and performance without fulfilling its payment obligations.

79.     Plaintiffs is entitled to restitution in an amount equal to the value of the services performed on BASN's behalf.

**SIXTH CAUSE OF ACTION**

**DECLARATORY RELIEF AS TO THE MSA**

**(By Plaintiffs Unix Packaging, LLC and Western Group Packaging, LLC Against**

**Defendant BA Sports Nutrition, LLC)**

80.     Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth above.

81.     An actual controversy has arisen and now exists between Plaintiffs and BASN related to the rights and obligations under contracts relating to Plaintiffs and BASN's partnership for production of BASN products, of which BASN is now claiming

-22-

that the MSA between Coca-Cola and Unix governs the Plaintiffs and BASN's partnership for production, not the operative LOIs.

82.      BASN and Plaintiffs never entered into any agreement to be bound by the MSA terms, let alone an SOW stating so as required by the MSA.

83.      After Coca-Cola acquired BASN, both BASN and Coca-Cola provided written notices to Plaintiffs expressly stating the LOIs would remain in effect and continue to govern the parties' partnership for production.

84.      BASN and Plaintiffs' subsequent agreements never mentioned the MSA and stated that the LOIs were the operative agreements for the parties' partnership for production.

85.      Plaintiffs are entitled to a judicial determination that:

      a.      The MSA does not govern BASN and Plaintiffs' rights and obligations as to their conduct and partnership for production of BASN's beverage products; and

      b.      The LOIs and the amendments thereto executed between 2019 to 2021 between BASN and Plaintiffs are operative agreements governing the parties' rights and obligations as to their conduct and partnership for production of BASN's beverage products.

86.      A judicial determination, as set forth above, is necessary and appropriate at this time under the circumstances to ensure that the parties' rights and obligations are appropriately assessed under the correct agreements, the LOIs.

<u>**SEVENTH CAUSE OF ACTION**</u>

<u>**DECLARATORY RELIEF AS TO BASN'S INDEMNIFICATION CLAIM**</u>

**(By Plaintiffs Unix Packaging, LLC and Western Group Packaging, LLC Against Defendant BA Sports Nutrition, LLC)**

87.      Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth above.

88.    An actual controversy has arisen and now exists between Plaintiffs and BASN related to the rights and obligations under the contracts applicable to the parties' indemnification obligations related to the production of BASN products.

89.    BASN asserted an indemnification claim against Plaintiffs under the MSA for BASN's $15 million loss it allegedly incurred due to the February 2023 Voluntary Recall.  However, the MSA does not govern the parties' rights and obligations as to production of BA Water Product in the CA Facility.

90.    The CA 2021 LOI governs the production of BA Water products in the CA Facility, including the February 2023 Voluntary Recall.

91.    Under the CA 2021 LOI, there is no indemnification provision.  As such, Plaintiffs' have no indemnification obligations, including as to loss, to BASN.

92.    Plaintiffs are entitled to a judicial determination that:

    a.    BASN's indemnification claim for $15 million in losses against
          Plaintiffs for the February 2023 Voluntary Recall is invalid.

93.    A judicial determination, as set forth above, is necessary and appropriate at this time under the circumstances to ensure that the parties' rights and obligations are appropriately assessed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

1.    For general, special, and compensatory damages in an amount to be proven at the time of trial;

2.    For pre-judgment interest on all damages at the applicable rate;

3.    For an award of exemplary or punitive damages in an amount to be proven at the time of trial;

-24-

1    4.    For an award of attorneys' fees;

2    5.    For judgment against BASN declaring that the LOIs and the amendments

3         thereto govern the parties' rights and obligations as to their partnership for

4         production BASN's beverage products, not the MSA;

5    6.    For judgment against BASN declaring that BASN's indemnification claim

6         for $15 million in losses against Plaintiffs for the February 2023 Voluntary

7         Recall is invalid;

8    7.    For the costs of suit herein; and

9    8.    For such other and further relief as the Court deems proper.

10

11   Dated:  February 7, 2024          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

12

13

14

15                                      _____
                                        JOSEPH F. COYNE, JR.
16                                      MARY E. TARDUNO
                                        JENNIFER N. LE
17                                      Attorneys for Plaintiffs
                                        UNIX PACKAGING, LLC AND WESTERN
18                                      GROUP PACKAGING. LLC

19

20

21

22

23

24

25

26

27

28

1

## **JURY DEMAND**

2        Plaintiffs request a trial by jury on all claims.

3

4    Dated:  February 7, 2024          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

5

6

7

8

9                                                  JOSEPH F. COYNE, JR.
                                                   MARY E. TARDUNO
10                                                 JENNIFER N. LE
                                                   Attorneys for Plaintiffs
11                                                 UNIX PACKAGING, LLC AND WESTERN
                                                   GROUP PACKAGING. LLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**<br>**Branch Name:** Stanley Mosk Courthouse<br>**Mailing Address:** 111 North Hill Street<br>**City, State and Zip Code:** Los Angeles CA 90012 | |
|---|---|
| **SHORT TITLE:** UNIX PACKAGING, LLC, et al. vs BA SPORTS NUTRITION, LLC<br><br>**NOTICE OF CONFIRMATION OF ELECTRONIC FILING** | **CASE NUMBER:**<br>24STCV03219 |

The Electronic Filing described by the below summary data was reviewed and accepted by the Superior Court of California, County of LOS ANGELES. In order to process the filing, the fee shown was assessed.

**Electronic Filing Summary Data**

Electronically Submitted By:   Legal Connect
Reference Number: 9158641_2024_02_07_15_53_16_281_6
Submission Number: 24LA00222823
Court Received Date: 02/07/2024
Court Received Time: 4:02 pm
Case Number: 24STCV03219
Case Title: UNIX PACKAGING, LLC, et al. vs BA SPORTS NUTRITION, LLC
Location: Stanley Mosk Courthouse
Case Type: Civil Unlimited
Case Category: Contract/Warranty Breach - Seller Plaintiff (no fraud/negligence)
Jurisdictional Amount: Over $35,000
Notice Generated Date: 02/07/2024
Notice Generated Time: 4:14 pm

| **Documents Electronically Filed/Received** | **Status** |
|---|---|
| Complaint | Accepted |
| Civil Case Cover Sheet | Accepted |
| Summons | Accepted |

**Comments**
Submitter's Comments:

Clerk's Comments:

**NOTICE OF CONFIRMATION OF FILING**

**Electronic Filing Service Provider Information**
Service Provider: Legal Connect
Contact: Legal Connect
Phone: (800) 909-6859

Superior Court of California
County of Los Angeles
,

**Receipt**   EFM-2024-7760423.1

**Date:**   2/7/24 4:14 PM
**Time:**   2/7/24 4:14 PM

CASE # 24STCV03219
UNIX PACKAGING, LLC, et al. vs BA

| | |
|---|---|
| Unlimited Civil- Compt/UD/Pet filed >$35k - GC70611,70602.5,70602.6 For Plaintiff | 435.00 |
| Court Transaction Fee | 2.25 |
| **Case Total:** | 437.25 |

**Total Paid:**   437.25

24LA00222823